**COUNTRYWIDE FUNDING CORPORATION, a New York corporation, and Countrywide Credit Industries, Inc., a Delaware corporation, Plaintiffs,**

v.

**COUNTRYWIDE FINANCIAL CORPORATION, a Michigan corporation, Countryside Financial Corporation, a Michigan corporation and Ronald E. Reblin, an Individual, Defendants.**

No. 1:93–CV–832.

United States District Court,
W.D. Michigan,
Southern Division.

Aug. 11, 1994.

James E. Stewart, John H. Dudley, Jr., J. Michael Huget, Butzel Long, Detroit, MI, for Countrywide Funding Corp.

James E. Stewart, John H. Dudley, Jr., J. Michael Huget, Detroit, MI, for Countrywide Credit Industries, Inc.

David M. Kipley, Brott, Kipley, Grunst & Settles, P.C., Acme, MI, for Countrywide Financial Corp., Ronald E. Reblin, Countryside Financial Corp.

## OPINION

QUIST, District Judge.

Plaintiffs Countrywide Funding Corporation and Countrywide Credit Industries, Inc.

brought this trademark infringement action against defendants Countrywide Financial Corporation, Countryside Financial Corporation, and Ronald Reblin. Plaintiffs moved for summary judgment on April 8, 1994. Defendants did not file a response to the motion until June 9, 1994. In the response, defendants essentially conceded plaintiffs' claim to the trademark. Defendants documented that the names of both Countrywide Financial Corporation and Country Side Financial Corporation [1] were changed on May 4, 1994. At a hearing by telephone on June 13, 1994, the parties agreed that an injunction would issue and that plaintiff would not pursue its claim for damages. In subsequent discussion the parties did not, however, agree on the terms of the injunction. Also at issue is plaintiffs' claim to attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a).

### Background Information

Plaintiffs are corporations engaged in mortgage lending. Their business is nationwide and they have nine offices in Michigan. Plaintiffs opened their first Michigan office in 1989 and represent that they are currently servicing more than 11,000 loans in Michigan with an aggregate balance of more than $800,000,000.

Defendant Ronald Reblin is the president of Countrywide Financial Corporation, which is also engaged in mortgage lending. He incorporated Countrywide Financial Corporation in 1992 and began using the "Countrywide" name. In a letter dated July 21, 1992, plaintiffs demanded that Countrywide Financial cease using the "Countrywide" name and Reblin agreed to cease. Defendants, however, continued to use the "Countrywide" name, as plaintiffs document in their affidavits. In fact, defendants opened an office in Southfield, Michigan, under the name "Countrywide Financial Corporation" at a location across the street from an office of Countrywide Funding Corporation.

Plaintiffs filed suit in October 1993 after defendants failed to respond to plaintiffs'

1. The official corporate name is "Country Side," but the documents in the record show that it is frequently written "Countryside."

July 9, 1993, request to cease using the "Countrywide" name. In November 1993, defendants' counsel represented that Reblin had changed the name from "Countrywide" to "Countryside." Plaintiffs then filed an amended complaint, alleging that "Countryside" also infringed their trademark. In defendants' answer to the Amended Complaint, filed January 12, 1994, they state that they are not using the mark "Countrywide." Plaintiffs, however, have submitted unrefuted evidence that defendants continued to use the name "Countrywide" around the time of their answer and in the following months when they originated mortgages, filed their annual report, and ordered radio advertising.

## DISCUSSION

■ Plaintiffs' trademark infringement claims are governed by the Lanham Act, 15 U.S.C. § 1051 *et seq.* A claim under the Act requires a finding of likelihood that the defendants' mark will cause confusion or mistake as to the source of the services. The Sixth Circuit requires that the following factors be considered to determine likelihood of confusion:

1.  strength of the plaintiff's mark;
2.  relatedness of the services;
3.  similarity of the marks;
4.  evidence of actual confusion;
5.  marketing channels used;
6.  likely degree of purchaser care and sophistication;
7.  intent of the defendant in selecting the mark; and
8.  likelihood of expansion of the product lines using the mark.

*Homeowners Group v. Home Marketing Specialists*, 931 F.2d 1100, 1106 (6th Cir. 1991). Whether there is a likelihood of confusion is a mixed question of fact and law, but the "determination of whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion." *Id.* at 1107.

■ Plaintiffs have documented each of these factors. They have showed that the mark is strong in that they conduct a substantial amount of business using the mark and advertise widely. The services provided by defendants are very similar to those provided by plaintiffs, as are the marks. Plaintiffs showed actual confusion by the postal service, advertisers, and persons placing telephone calls to the wrong office. The actual confusion and the opening of an office in close proximity to plaintiffs' office permit an inference that customers are likely to be confused and that defendants intended to cause confusion.[2]

The *Homeowner* court described in detail the burden a defendant must meet to avoid summary judgment where the likelihood of confusion is the dispositive factor. It stated:

> [A] nonmoving party must establish, through pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, that there are genuine factual disputes concerning those … factors which may be material in the context of the specific case. In examining the record to determine whether a genuine issue of material fact exists, a court must review all evidence in the light most favorable to the nonmoving party.

*Id.*

Defendants have not disputed that they infringed on plaintiffs mark.[3] Instead, they maintain that they have abandoned the use of both the "Countrywide" and "Countryside" by changing the name of Countrywide Financial Corporation to Sure Financial Corpora-

---

2.  The last factor, likelihood of expansion, need not be discussed because plaintiffs already operate in the same area as defendants. *See Little Caesar, Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 572 (6th Cir.1987).

3.  Defendants state that plaintiffs should be estopped from claiming trade name infringement because the name "Countrywide" was not registered as a service name until January 1993, long after defendant Country Side obtained its corpo-

rate name in 1988. They do not however, provide any support for this position.

Plaintiffs' Exhibit D, their service mark registration, shows that the first use by plaintiffs in commerce was in October 1983. Plaintiffs applied for registration on September 30, 1991, and the service mark was registered on January 5, 1993. The Lanham Act provides that application for registration of a service mark "shall constitute constructive use of the mark." 15 U.S.C. § 1057(c).

tion and changing Country Side Financial Corporation to Ron & Lou Financial Corporation. Defendants support this claim with documents showing the name changes dated May 4, 1994.

A permanent injunction is appropriate relief on summary judgment. *Thrifty Rent–A–Car System, Inc. v. Thrifty Auto Sales of Charleston, Inc.,* 849 F.Supp. 1091, 29 U.S.P.Q.2d 1836 (S.D.S.C.1993) and *Country Floors Inc. v. Mizak,* 29 U.S.P.Q.2d 1468 (D.Conn.1993). As to attorney fees, the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

■ Plaintiffs claim that they should be awarded attorney fees because the infringement was deliberate and willful and because defendants ignored repeated requests to cease use of the mark and forced plaintiffs to resort to litigation to protect their mark. Plaintiffs point out that the misrepresentations were not made only to plaintiffs but also to the Court in that defendants stated in their answer to the Amended Complaint that they had ceased use of the name "Countrywide" yet continued to use the name. Defendants state that this is not an "exceptional" case because plaintiffs are merely seeking an injunction, not damages, and cannot show fraud.

The leading Sixth Circuit case on Lanham Act attorneys' fees is *Hindu Incense v. Meadows,* 692 F.2d 1048 (1982), which held that "exceptional cases" are "cases in which the infringement was malicious, fraudulent, wilful or deliberate." *Id.* at 1051. In *Hindu Incense,* the court of appeals held that it was not an abuse of discretion to deny attorney fees in a situation where defendant had not been willing to discontinue their use or settle without a trial when informed by plaintiffs of their infringement. *Id.* at 1051. The appellate court noted that the trial court had found that the infringement was not fraudulent, although it was not wholly innocent, in that defendant had acted under the mistaken belief that plaintiff had abandoned the mark

and that the plaintiff had admitted there was no loss of sales. *Id.* at 1052.

*Hindu Incense* cited *O'Brien International, Inc. v. Mitch,* 209 U.S.P.Q. 212, 221 (N.D.Cal.1980), for the proposition that a case is not exceptional if there is the slightest doubt as to defendant's deliberate, willful intent to infringe. 692 F.2d at 1052 (citing 209 U.S.P.Q. at 221). Plaintiffs also cite *O'Brien* because, in *O'Brien,* plaintiff was awarded attorneys' fees after being put on notice of plaintiff's substantially identical mark. 209 U.S.P.Q. at 221. In *O'Brien* defendant refused two written offers from plaintiff to waive damages if he would cease using the marks, "at a time when Mr. Mitch should have been fully aware of the illegality of his conduct." *Id.* The court commented that defendant "plainly continued this flagrant infringement with the hope that O'Brien would be reluctant to incur the expense of litigation." *Id.*

In addition to arguing that theirs is not an exceptional case because of lack of intent, defendants argue that a case cannot be exceptional unless monetary damages are shown. Defendants cite *Wynn Oil Co. v. American Way Service Corp.* in support of this argument. In *Wynn Oil,* the award of attorneys' fees was reversed on the grounds that attorneys' fees were awarded as a compromise for court's refusal to award monetary damages. 943 F.2d 595, 607 (6th Cir. 1991). This holding does not require that monetary damages be applied in every case in which attorney fees are awarded. Instead, it requires that attorney fees be awarded only on grounds of malicious, fraudulent, willful or deliberate intent to infringe, not in lieu of damages when the amount of damages cannot be ascertained. *Id.* at 607.

In the instant case, defendants promised to cease using "Countrywide" but continued to use it for some time. They claim that it took some time to make the changes. Plaintiff maintains that they simply lied and failed to make the change.[4] The unrefuted evidence that defendants made arrangements for radio

---

4. In fact, plaintiffs assert that defendants or their agents are still using "Countrywide" in soliciting mortgage business and still have a "Countryside"

sign on their main office in Kalkaska, Michigan. *See* Plaintiffs' Motion for Expedited Consideration, filed August 5, 1994.

advertising in early 1994 using the name "Countrywide," long after they agreed to stop using the name, is evidence of bad faith similar to that in *Lien v. Compusoft of Kalamazoo, Inc.*, 1:89–CV–104, 1991 U.S.Dist. LEXIS 3218 (W.D.Mich.1991). In *Lien*, attorneys' fees awarded to plaintiff where defendant did not follow through on promises made during pretrial settlement negotiations, "essentially invited plaintiff to institute this action," and was uncooperative with the judicial proceedings. Defendants in the instant case likewise did not follow through on their promises to cease using the infringing marks or to take steps that would have avoided litigation, despite defendants' purported agreement to change the marks. *See also O'Brien*, 209 U.S.P.Q. at 221 (attorneys' fees awarded against party that continued to use mark when he knew of the illegality of his conduct).

Accordingly, plaintiff will be awarded attorneys' fees pursuant to 15 U.S.C. § 1117(a), not in lieu of a damage award, but on the grounds that defendants' infringement was willful and deliberate.

### CONCLUSION

For the reasons set forth above, plaintiffs' Motion for Summary Judgment or for an Injunction (docket. no. 19) is GRANTED. Defendants will be permanently enjoined from using the marks "Countrywide" and "Countryside." In addition, defendants must pay plaintiffs' reasonable attorneys' fees following determination of the amount of those fees. Plaintiff will be ordered to submit, by affidavit, documents setting forth in detail the attorneys' fees they incurred. An Order consistent with this Opinion will be entered.