R. GUY COLE, JR., Circuit Judge,
dissenting.
Because I would remand this case for an evidentiary hearing to determine why Har *456 ris’s counsel failed to remove Mrs. Barber from the jury, I respectfully dissent.
I.
A district court should grant an evidentiary hearing if the petitioner can demonstrate that: “(1) the grounds he alleges are sufficient to secure his release from custody, (2) relevant facts are in dispute, and (3) the state court did not provide a full and fair evidentiary hearing.” Washington v. Renico, 455 F.3d 722, 731 (6th Cir.2006) (citing Bowling v. Parker, 344 F.3d 487, 512 (6th Cir.2003)). Under AEDPA, a district court should not hold an evidentiary hearing unless the habeas petitioner “failed to develop the factual basis of a claim in State court proceedings” and he shows “a factual predicate that could not have been previously discovered through the exercise of due diligence.” 28 U.S.C. § 2254(e)(2)(A)(ii). If a petitioner survives this hurdle, Rule 8 of the Rules Governing § 2254 Proceedings as adopted by the Supreme Court sets forth the procedure a district court must employ when determining whether to conduct an evidentiary hearing. See Rule 8 Advisory Committee’s Note (Rule 8 does not “supercede the restrictions on evidentiary hearings contained in 28 U.S.C. § 2254(e)(2).”). Under Rule 8, “the judge must review the answer, any transcripts and records of state-court proceedings, and any [other] materials ... to determine whether an evidentiary healing is warranted.”
We review a district court’s decision not to conduct an evidentiary hearing for an abuse of discretion. Alley v. Bell, 307 F.3d 380, 389 (6th Cir.2002). A district court has abused its discretion when we are left with a definite and firm conviction that the trial court committed a clear error of judgment. Eagles, Ltd. v. American Eagle Found., 356 F.3d 724, 726 (6th Cir. 2004) (quotation omitted). Further, “[a] district court abuses its discretion when it relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard.” Yolton v. El Paso Tenn. Pipeline Co., 435 F.3d 571, 577 (6th Cir.2006) (quotation omitted).
A.
As a threshold matter we must first determine whether Harris “seeks to apply a rule of law that was clearly established at the time of his conviction in the state court.” Miller v. Webb, 385 F.3d 666, 672 (6th Cir.2004) (citation omitted). I would find that he does. Harris, in claiming that his trial counsel was constitutionally ineffective in not seeking to remove Barber from the jury either “for cause” or with a peremptory challenge, relies on the Supreme Court’s holding in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Strickland, which was clearly established law at the time of Harris’s trial, “established a two-prong test to evaluate claims of ineffective assistance of counsel pursuant to the Sixth Amendment.” Miller, 385 F.3d at 672. “First, the petitioner ‘must show that counsel’s representation fell below an objective standard of reasonableness.’ ” Id. (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052). “ ‘Judicial scrutiny of counsel’s performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.’ ” Id. (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052). “Second, the petitioner must show that counsel’s performance prejudiced the petitioner.” Id. (citing Strickland, 466 U.S. at 689, 104 S.Ct. 2052). In other words, “the petitioner must ‘show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.’ ” *457 Id. (quoting Strickland 466 U.S. at 689, 104 S.Ct. 2052).
Supreme Court precedent clearly establishes that the denial of the right to be tried by an impartial decisionmaker is an error that taints any resulting conviction with constitutional infirmity. See, e.g., Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (holding that the presence of a biased decisionmaker is structural error “subject to automatic reversal”); Edwards v. Balisok, 520 U.S. 641, 647, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (“A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him.”); Johnson v. United States, 520 U.S. 461, 469, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); Rose v. Clark, 478 U.S. 570, 577-78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986); Tumey v. Ohio, 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927). The right to an impartial jury “is the lens through which [this Court] must examine counsel’s performance in this case.” Id. (citing Ross v. Oklahoma, 487 U.S. 81, 85, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) (in a direct appeal, “[h]ad [the biased juror] sat on the jury that ultimately sentenced petitioner to death, and had petitioner properly preserved his right to challenge the trial court’s failure to remove [the juror] for cause, the sentence would have to be overturned”)).
It is likewise clear that the primary purpose of voir dire is to “select an impartial jury.” Mu’Min v. Virginia, 500 U.S. 415, 431, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). See also McDonough Power Equip, v. Greenwood 464 U.S. 548, 554, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984) (“One touchstone of a fair trial is an impartial trier of fact — ‘a jury capable and willing to decide the case solely on the evidence before it.’ ... Voir dire examination serves to protect that right by exposing possible biases.” (quoting Smith v. Phillips, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982))). Further, in determining whether a juror is biased, the question “is plainly one of historical fact.” Patton v. Yount, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). If “a juror [swore] that he could set aside any opinion he might hold and decide the case on the evidence, and [if] the juror’s protestation of impartiality [should be] believed,” we will say that a juror is not biased. Id. A juror is considered to be biased if she cannot “conscientiously apply the law and find the facts.” Wainwright v. Witt, 469 U.S. 412, 423, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).
Finally, it is clearly established that “[a]n attorney undoubtedly has a duty to consult with the client regarding ‘important decisions,’ including questions of overarching defense strategy.” Florida v. Nixon, 543 U.S. 175, 187, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (citing Strickland, 466 U.S. at 688, 104 S.Ct. 2052). It is also clear that there are “ ‘basic rights that the attorney cannot waive without the fully informed ... consent of the client.’ ” New York v. Hill, 528 U.S. 110, 114-15, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000) (quoting Taylor v. Illinois, 484 U.S. 400, 417-18, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988)). One such basic right is the right to an impartial jury as guaranteed by the Sixth Amendment. See United States v. Martinez-Salazar, 528 U.S. 304, 311, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000). If a biased juror is seated because of error, rather than strategy, a new trial is warranted and a reviewing court need not weigh Strickland’s prejudice prong. See, e.g., id. at 316-17, 120 S.Ct. 774 (citing Parker v. Gladden, 385 U.S. 363, 366, 87 S.Ct. 468, 17 L.Ed.2d 420 (1966) (a defendant is “entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors”)). See also Neder, 527 U.S. at 8, 119 S.Ct. 1827.
*458 Therefore, I believe that Harris has met his threshold burden of showing that the law he seeks to apply was clearly established by the Supreme Court at the time of his conviction.
B.
I recognize the distinct possibility that Harris’s counsel refrained from striking Barber as a juror as part of a calculated strategy. However, based on the record before us, I do not believe that any court, including the state appellate court, is able to determine whether Harris’s attorney consciously employed this strategy, nor whether Harris approved of it. The record only indicates that Harris and his attorney conversed privately during the course of voir dire. If, in fact, Barber was left on the jury due to the ineffective assistance of Harris’s counsel rather than for permissible strategic reasons, I believe that her bias is evident in that she never swore that she could put aside her preference for police testimony and decide the case on the evidence. See Patton, 467 U.S. at 1036,104 S.Ct. 2885.
The state appellate court found, as did the district court, that Harris’s counsel consulted with Harris several times during voir dire. However, the state appellate court did not determine whether Harris, in those conversations, was made aware of any trial strategy related to Barber or whether he consented to keeping Barber on the jury panel; the appellate court merely assumed that Harris and his counsel were conferring about which jurors to excuse. In determining that Harris was not prejudiced by the presence of a biased juror, I believe that the state appellate court made an unreasonable application of clearly established constitutional law. See Edwards, 520 U.S. at 649, 117 S.Ct. 1584 (“A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him.”). Further, even assuming that the state appellate court correctly appreciated Strickland’s prejudice prong in the context of juror bias, it is clear to me from the record that the only evidence linking Harris to the firearm used in the shooting was the testimony of the police officers; therefore, the state appellate court made an unreasonable determination of the facts in determining that police testimony was unimportant. See 28 U.S.C. § 2254(d).
C.
I would find that the district court erred in its determination that the record was sufficient in two regards: first, the district court incorrectly concluded that Strickland’s prejudice prong must be analyzed when a possibly biased juror is present; and, second, the record does not indicate whether Harris’s trial counsel failed to remove Barber because of a permissible strategic reason with the informed consent of his client, or because he was constitutionally ineffective.
Because Harris can show that: if he is correct he should be released from custody, relevant facts surrounding the nature of his interaction with his counsel are in dispute, and the state court did not conduct an evidentiary hearing, see Bowling, 344 F.3d at 512, I believe that he is entitled to an evidentiary hearing. I would find that the district court, therefore, abused its discretion in failing to hold an evidentiary hearing to determine the facts necessary to resolve Harris’s habeas petition.
II.
For the foregoing reasons, I would remand this case to the district court for an evidentiary hearing.